(No. 6440.   November 19, 1937.)

STATE, Respondent, v. LETCHER P. NEIL, Appellant.

[74 Pac. (2d) 586.]

Frank F. Kibler and Oppenheim & Lampert, for Appellant.

J. W. Taylor, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondent.

BUDGE, J.—Appellant Neil was charged with and convicted of the crime of manslaughter in connection with an automobile collision at 3d South and 11th Avenue in the city of Nampa on August 2, 1936, in which Eileen Lockner was injured, and from which injuries she died August 25, 1936. The appeal is taken from the judgment of conviction.

The first assignment of error is to the effect that the court erred in overruling and denying appellant's demand for bill of particulars, whereby appellant sought to require the State to set forth in advance of the trial the specific acts constituting the offense charged. Appellant did not demur to the information and made no motion in arrest of judgment, but sought to raise objections to the information by demanding bill of particulars. It would appear to be unquestionable that a demand for bill of particulars does not take the place of a demurrer. (I. C. A., secs. 19–1601, 19–1603, 19–1611.) Without expressing any opinion as to the appropriateness of a demand for bill of particulars in the instant situation, it is to be observed that upon the demand having been made counsel for respondent made the following statement:

"I will put this in the record rather than take the time to write it out. This is to inform the defendant that the prosecution does not in this action rely upon or intend or expect to prove the charge of manslaughter resulting upon a sudden quarrel, or from heat of passion, or that it resulted from the perpetration or attempt to perpetrate arson, rape, robbery, or mayhem."

No futher demand for bill of particulars was made. It was appellant's duty, if he deemed the above statement an insufficient explanation, to seek a more specific bill, that is, make a new demand. (31 C. J. 753, 754, sec. 311; *Comm. v. Lenhart,* 40 Pa. Super. 572; 49 C. J. 648, sec. 913.) In any event the allowance of a bill of particulars is not a matter of right, but is within the sound discretion of the trial court. (*State v. Rathbone,* 8 Ida. 161, 67 Pac. 186; *State v. Gee,* 48 Ida. 688, 284 Pac. 845; *State v. Clark,* 47 Ida. 750, 278 Pac. 776; 31 C. J., p. 751, cases cited in notes 68, 69, 70.) In the absence of a clear abuse of discretion the action of the trial court will not be reviewed. (*State v. Rathbone, supra;* 17 C. J., sec. 3575, p. 228, and cases, note 31; *State v. McDermott,* 52 Ida. 602, 17 Pac. (2d) 343; *State v. Stevens,* 48 Ida. 335, 282 Pac. 93; *State v. Orr,* 53 Ida. 452, 24 Pac. (2d) 679; *State v. George,* 44 Ida. 173, 258 Pac. 551.)

Appellant objected to the introduction of any evidence, basing such objection upon the grounds that the in-

formation "misinformed" the jury and that it placed appellant "upon the defense of three separate and distinct causes or charges without segregation and information as to which one (appellant would) have to meet." The second assignment of error urges that the court erred in permitting the introduction of evidence over this objection. From the objection it appears that appellant in effect attempted to raise grounds of demurrer provided for in I. C. A., section 19–1603, by the objection to the introduction of evidence. The objections do not come within the terms of those which need not be taken by demurrer as provided in I. C. A., sec. 19–1611:

"When the objections declared grounds of demurrer by this chapter appear upon the face of the indictment, they can only be taken by demurrer, except that the objections to the jurisdiction of the court over the subject of the indictment, or that the facts stated do not constitute a public offense, may be taken at the trial under the plea of not guilty, or after the trial in arrest of judgment."

Appellant having filed no demurrer such objections as were attempted to be taken by the objection to the introduction of any evidence must be deemed to have been waived. (*People v. Nash*, 1 Ida. 206, 207, at 210; *State v. Bilboa*, 33 Ida. 128, 190 Pac. 248; *State v. Knutson*, 47 Ida. 281, 274 Pac. 108; *State v. Fong Wee*, 47 Ida. 416, 275 Pac. 1112; *State v. Hinckley*, 4 Ida. 490, 42 Pac. 510; *In re Alcorn*, 7 Ida. 101, 60 Pac. 561; *In re Dawson*, 20 Ida. 178, 117 Pac. 696, 35 L. R. A., N. S., 1146; *In re Bottjer*, 45 Ida. 168, 260 Pac. 1095.)

Appellant's third assignment, urging error in striking and overruling his motion for new trial, is without merit, the application having been made 34 days after the expiration of the time prescribed by I. C. A., section 19–2308, providing:

"The application for a new trial may be made before or after judgment; and must be made within ten days after verdict, unless the court or judge extends the time."

See, *State v. Dupuis*, 7 Ida. 614, 65 Pac. 65; *State v. Rice*, 7 Ida. 762, 66 Pac. 87; *State v. Smith*, 5 Ida. 291, 48 Pac. 1060; *State v. Chacon*, 36 Ida. 148, 209 Pac. 889; 16 C. J. 1210, sec. 2732. Upon pronouncement of judgment, more than ten days after the verdict was rendered and without any

application having been theretofore made, the court stated: "that the execution of this sentence and judgment be suspended for thirty days to enable counsel for defendant to ascertain whether or not they want to make a motion for a new trial." Whatever the intendment of this statement the right to move for a new trial was lost, the court being without jurisdiction in the matter after the lapse of the ten day period provided by statute. (*De Castro v. Richardson*, 25 Cal. 49; *Leech v. West*, 2 Cal. 95; Hayne New Trial & Appeal, vol. 1, sec. 21, pp. 131, 132; *Thompson v. Lynch*, 43 Cal. 482; *Clark v. Crane*, 57 Cal. 629; *Estate of Scarboro*, 63 Cal. 5; *Cooney v. Furlong*, 66 Cal. 520, 6 Pac. 388; *Packer v. Doray*, 98 Cal. 315, 316, 33 Pac. 118.)

During the cross-examination of appellant's expert witness Dr. Belknap the trial court stated: "I have to ask some questions. I don't think it would be a fair trial to the state if I didn't ask a question or two", and thereafter the court asked certain questions of the witness. Assignments four and five urge that this cross-examination by the court and the remark was erroneous, showing "sympathy for and in aid of the prosecution" and deprived appellant of a fair and impartial trial. An examination of the record does not disclose either that the questions asked nor the conduct of the trial judge in any way indicated the opinion of the trial court upon appellant's guilt or innocence and in no way tended to be prejudicial to appellant. The questions propounded by the trial court were stated in an entirely impartial manner and the answers adduced were manifestly favorable to appellant:

"Now Doctor, will you define the term, under the influence of intoxicating liquor, as you have been using it in your testimony?

"A. The term, under the influence of intoxicating liquor means that a man is sufficiently narcotized from alcohol that he lacks the proper co-ordination and proper trend of mental thought so that his acts are not normal.

"Q. Does a single drink of alcoholic liquor have any effect in the way of putting a man under the influence of intoxicating liquor?

"A. A small drink of alcoholic liquor is a stimulant. It should not put him under the influence of intoxicating liquor so that he would not know what he was doing or is not able to do what he wishes. We frequently use it as a stimulant.

"Q. Would his mental reaction be about the same as if he had not had any?

"A. Yes, if taken in a medical dose.

"Q. When does the point come, when does it come that he gets under the influence of liquor?

"A. That point comes when his mind does not re-act readily and his movements are not co-ordinated properly. Then he comes to be considered drunk.

"Q. Can you tell anything about that without seeing the patient?

"A. Well from a careful history of his actions you can tell something about it but to get a fine judgment of his degree, I would have to see him."

Remarks or conduct of a trial judge intended to make points clear or elucidate the matter, and which do not indicate an opinion of the court as to the guilt of the defendant, do not constitute prejudicial error. (*State v. Allen*, 23 Ida. 772, 131 Pac. 1112; *State v. Roland*, 11 Ida. 490, 83 Pac. 337; *People v. Goldenson*, 76 Cal. 328, 19 Pac. 161; *Johnson v. State*, 33 Okl. Cr. 56, 242 Pac. 277; *Lacy v. State*, 33 Okl. Cr. 161, 242 Pac. 296.) From the evidence in the record with reference to the amount of alcoholic liquor (beer) which appellant stated he had consumed and from the answers asked by the court the only interpretation of partiality that would be justified, if any, is partiality in favor of appellant. In any event there is an entire lack of showing of any prejudice. Also, it might be observed that no objection was made or taken to the remark of the trial judge, which being true the matter is not before this court for review. (*State v. Frank*, 51 Ida. 21, 1 Pac. (2d) 181; *Giraney v. Oregon Short Line R. R. Co.*, 54 Ida. 535, 33 Pac. (2d) 359, and cases cited, p. 546.)

Under the 6th and 7th assignments appellant urges error in the exclusion of testimony of the witness Lawrence, with reference to the recital of certain conversations

overheard by the witness fifteen to twenty minutes after the collision, between an unknown and unidentified person and an unknown policeman, and a telephone conversation by two unidentified persons. The admission of evidence as part of the *res gestae* is left largely to the sound discretion of the trial court. (*Towne v. Northwestern Mut. Life Ins. Co.*, (Ida.)·70 Pac. (2d) 364; *Erickson· v. E. Rutledge Timber Co.*, 33 Ida. 179, 191 Pac. 212; *State v. Breyer*, 40 Ida. 324, 232 Pac. 560; *Coffin v. Bradbury*, 3 Ida. 770, 35 Pac. 715, 95 Am. St. 37.) The witness was unable to identify by his own knowledge the persons alleged to have made the statements and participated in the telephone conversation as parties having any connection with the collision either as actors, principals, bystanders, or otherwise, and no error appears in the rejection of such testimony.

Appellant's 8th and 9th assignments of error are to the effect that the court erred in not permitting the witnesses Anderson and Hanson, allegedly qualified as experts (automobile mechanics), to state their opinion ''as an expert, and based upon an ·examination of the'' cars ''as to which was the striking car.'' The specific questions asked and to which objections were made and sustained were:

''And could that bend occur from a front blow?''

''Was there any evidence on that car around the door in-` dicating a side blow?''

''Do you have any opinion as to the rate of speed a, car weighing 1877 pounds, with nine passengers, would have to go to make that indenture?''

The record discloses that these questions were not asked in connection with, that is, they were not preceded by, any specific question asking for an opinion or of a hypothetical nature, but appear suddenly in thè examination constituting a recital of the damage which the witnesses found upon examination of the automobiles. The questions asked were peculiarly devoid of the usual recital of facts and circumstances upon which questions asking an opinion are ordinarily based. (16 C. J. 784.) In fact the questions do not appear to request an opinion upon the point urged by the assignments, namely: which was the striking car. Two questions

asked the witness' conclusion as to the direction of a blow (producing instrument unnamed) and the remaining question is a hypothetical question of speed, without the inclusion therein of the facts in evidence. In determining whether or not conclusions or opinions of an ordinary or an expert witness are admissible the court may exercise a large measure of discretion (16 C. J. 749, 22 C. J. 701, p. 608), and it does not appear that any abuse of such discretionary power exists. Considerable testimony was adduced from these witnesses as to the extent and nature of the damage to the cars; the points at which the damage existed; and a recital of the existing physical facts disclosed by their examination. In other words the evidence constituted a reproduction of the data from which the witnesses' conclusions or opinions would of necessity have been drawn. The necessity for receiving the opinion or conclusion of an ordinary or skilled witness in such circumstances depends upon whether or not the facts are such that they can be placed before and understood by the jury, and whether or not they are such matters of common observation and experience that the jurors are just as competent to draw inferences therefrom as the witness. (16 C. J. 748, sec. 1532.) We are not prepared to say that the jury was not as well equipped to draw inferences from the data reproduced as were the witnesses. The rejection of such evidence does not appear to have been prejudicially erroneous.

Appellant urges that the evidence is insufficient to support the verdict in several particulars. It is urged the accident inflicting frontal fracture of the skull on the person of Eileen Lockner was not the cause of her decease. Dr. Rodwell testified the cause of deceased's death was a brain injury, she having received a depressed fracture over the frontal region of the skull, from the blow or whatever she received, and that he performed two operations. The first operation was to remove the depressed fracture from her brain, after which deceased remained about the same five or six days then grew worse. The second operation was then performed in the "hope of finding a clot and by removing the clot to get her to live." He testified the second operation would have been unnecessary except for the head injury re-

ceived, and that without the second operation she would have gotten worse and that in his best judgment, and from the findings of the post mortem, at the rate of her regression she would not have lived over a month. There is competent evidence that the deceased died as a result of the injuries received.

It is further urged .that evidence that defendant was drinking by reason of a smell on his breath is insufficient to sustain a further inference that he was under the influence of intoxicating liquor. There is evidence that appellant purchased two half gallons of beer; that he drank some of it; appellant was uncertain as to the amount he drank; the beer was consumed, except for two or three inches left in a container; the container was found in the Neil car; there was testimony that appellant talked "thick-lipped" or "thick-tongued," and at least one witness gave his opinion that appellant "was under the influence of intoxicating liquor."

Appellant further urges that the evidence shows conclusively that the Lockner car ran into and struck appellant's car on the right front fender, and a strong inference that the Lockner car was traveling at great speed, and that the driver admitted that he was exceeding the speed limit prescribed by statute at street intersections. There is positive testimony in the record that the Lockner car was struck by appellant's car, and there is evidence that appellant's car was traveling well past forty miles an hour in the opinion of one witness. With reference to the speed of the Lockner car the record discloses that Lockner stated he was traveling 25 to 30 miles an hour, and it appears that this was on a street protected with a stop sign over which appellant traveled. The record discloses at the most simply a conflict in the evidence with relation to the points raised, and there is sufficient competent evidence to support the verdict and judgment.

It would hardly seem necessary to discuss error predicated upon the giving and the refusal to give certain instructions. A careful examination of the instructions given by the court, several of appellant's instructions having been given as modified and also certain instructions of appellant having been

covered by the court's instructions, justifies the conclusion that the court's instructions when considered as a whole are not unfavorable to appellant and correctly and sufficiently state the law to be applied to the evidence adduced upon the trial.

It follows that the judgment must be affirmed and it is so ordered.

Ailshie and Givens, JJ., concur.

MORGAN, C. J., Concurring.—While I concur in the affirmance of the judgment in this case, it is not to be understood I join in the theory that a bill of particulars has any proper place in the practice of criminal law in Idaho. The pleadings whereby accusations in criminal cases are to be made, and defendants are to be informed of the crimes of which they are accused, and of the manner in which and the means by which the state will attempt to prove they committed them, are provided for in I. C. A., title 19, chapter 13. Sec. 19–1307 is as follows:

"All the forms of pleading in criminal actions, and the rules by which the sufficiency of pleadings is to be determined, are those prescribed by this code."

Following this are sections of the statute specifying what indictments shall contain. The statutory provisions with respect to indictments have been made applicable to informations by sec. 19–1203.

If the sections of the statute relating to the contents of indictments are followed, the defendant will be fully informed of the nature of the charge against him and no bill of particulars will be necessary. If the requirements of these sections have not been conformed to the statute specifies the remedy. It is by demurrer, which is provided for in I. C. A., title 19, chapter 16, commencing with sec. 19–1601, which is as follows:

"The only pleading on the part of the defendant is either a demurrer or a plea."

The grounds of demurrer are specified in that chapter and are adequate. Nothing is to be found in our code to suggest that a defendant is entitled to a bill of particulars. On the

other hand, the provisions of the statute cover the subject of criminal pleadings and the framing of issues in criminal cases, fully, and the legislative intention is clear therefrom that a defendant will be told all he needs to know in order to enable him to prepare himself for trial, by the indictment or information. If the indictment or information is insufficient in this particular a demurrer, provided for by statute, will produce the remedy.

Idaho cases may be found which seem to uphold the theory that where an indictment or information does not contain sufficient allegations of fact to fully inform the defendant of the nature of the charge against him, and of the manner in which and the means by which the crime he is accused of was committed, he may apply for and be furnished a bill of particulars. These cases are in conflict with the statute, which specifies the demurrer as the defendant's remedy.

I am authorized by Justice Holden to say he concurs in these views.

Petition for rehearing denied.